IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HENRY ALFRED THOMAS,           §
TDCJ #1300982,                 §
                               §
            Petitioner,        §
                               §
v.                             §          CIVIL ACTION NO. H-05-1629
                               §
RICK THALER, Director,         §
Texas Department of Criminal Justice - §
Correctional Institutions Division, §
                               §
            Respondent.[1]     §

## MEMORANDUM AND ORDER

The petitioner, Henry Alfred Thomas (TDCJ #1300982), is incarcerated in the Texas

Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). Thomas seeks a writ

of habeas corpus to challenge a state court conviction under 28 U.S.C. § 2254. The respondent

moved to dismiss. [Docket Entry No. 36]. Thomas has not filed a reply and his time to do so has

expired. After considering the pleadings, the state court records, and the applicable law, this court

denies the petition and dismisses this case. Final judgment is entered by separate order. The reasons

are set forth below.

## I.        Background

A Harris County grand jury returned an indictment against Thomas in Cause Number

919827, charging him with aggravated robbery while armed with a deadly weapon. At trial, the State

---

[1] The former respondent, Nathaniel Quarterman, has retired from his position as Director of the Texas
Department of Criminal Justice - Correctional Institutions Division. The court substitutes his replacement,
Rick Thaler, as the proper respondent under Rule 25(d) of the Federal Rules of Civil Procedure.

presented evidence that Thomas, with several others, robbed two men (James Bellinger and Tony Olivares, Jr.) at gunpoint in the parking lot of a local apartment complex. Officer Roger Chappell of the Houston Police Department ("HPD") Robbery Division testified that he identified Thomas as a suspect from information obtained during the investigation of a similar robbery that occurred around the same time in that neighborhood. An eyewitness (Kathy Martinez) identified Thomas as one of the armed robbers from a photographic array. She also identified him at trial. One of the victims (Olivares) also identified Thomas at trial as one of the men who robbed him armed with a handgun. A jury in the 180th District Court of Harris County, Texas, found Thomas guilty as charged in the indictment.

During the punishment phase, the State presented testimony from Officer Chappell about Thomas's participation in the other robbery that the officer investigated. The State also presented testimony from the victims of that other robbery (Claudia Loayes and Abraham Gonzales). The victims both identified Thomas as one of the men who robbed them at gunpoint in front of their four-year-old child. The jury sentenced Thomas to a twenty-year prison term.

On direct appeal, Thomas argued that the trial court erred by limiting his cross-examination of an identification witness (Kathy Martinez), in violation of his right to confront her about possible bias in favor of the state. Thomas also argued that he was denied effective assistance of counsel because his attorney failed to object to certain portions of Officer Chappell's testimony, including about out-of-court statements that linked Thomas to the extraneous robbery. The state court of appeals rejected Thomas's arguments and affirmed the conviction in an unpublished opinion. *Thomas v. State*, No. 14-03-00192-CR, 2004 WL 26258 (Tex. App. — Houston [14th Dist] Jan. 6, 2004). The Texas Court of Criminal Appeals refused Thomas's petition for discretionary review.

Thomas filed this federal petition for a writ of habeas corpus challenging the state-court conviction under 28 U.S.C. § 2254. In this petition, Thomas presents the two grounds for relief that were raised and rejected on direct appeal.[2] The respondent notes that Thomas makes no effort to show that he is entitled to relief under the federal standard of review and argues that the petition must be dismissed because the claims fail as a matter of law. The parties' contentions are analyzed below.

## II.   The Standard of Review

Federal habeas corpus proceedings filed after April 24, 1996 are governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). For claims adjudicated on the merits, a petitioner is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Brown v. Payton*, 544 U.S. 133, 141 (2005). Under this

---

[2] Thomas filed two state habeas corpus applications to challenge his aggravated robbery conviction in cause number 919827. Both of those applications were dismissed, without an adjudication on the merits, because Thomas filed them while his direct appeal was still pending. *See Ex parte Thomas*, Nos. 57,442-01 & 57,442-02. Because this federal habeas corpus proceeding concerns only the claims that were adjudicated on direct appeal, the court does not address Thomas's state habeas proceedings further.

standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

A state court's findings and conclusions are entitled to deference on federal habeas review unless the petitioner shows that they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2); *Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008). A state court's findings of fact are presumed correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption extends not only to express findings of fact but also to the implicit findings of the state court. *See Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citations omitted).

Thomas makes no reference to § 2254(d) in his pleadings. [Docket Entry No.21, *Petition*]. Thomas has not filed a reply to the respondent's answer and he does not otherwise attempt to show that the state court's decision to reject his claims is contrary to clearly established Supreme Court precedent. Because Thomas is *pro se*, however, his claims are addressed under the deferential AEDPA standard and the liberal construction given to *pro se* pleadings.

## III.   Analysis

### A.      The Confrontation Clause

Thomas alleges that the state trial court violated his constitutional rights by restricting his counsel's cross-examination of Kathy Martinez, who identified Thomas as one of the armed robbers.

This claim was rejected on direct review.  The appellate court affirmed the trial court's decision to limit cross-examination of Martinez about the fact that she was incarcerated in the Harris County Jail when Thomas was tried.  Thomas argues that by limiting his attorney's ability to question Martinez about her incarceration, the trial court violated his Sixth Amendment right because he could not cross-examine Martinez about her motive to testify or about potential bias.  The respondent responds that this claim does not merit relief under 28 U.S.C. § 2254(d) because Thomas does not show that a constitutional violation occurred or that the state court's decision to reject this claim was objectively unreasonable.

The Confrontation Clause states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI.  That right includes an opportunity to test the reliability and credibility of the State's witnesses through cross-examination into "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). The Supreme Court has stated that "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)) (emphasis in original).  A trial court "retains wide latitude" to place reasonable limits on a criminal defendant's right to cross-examine a witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679.

The record shows that Martinez was homeless at the time of Thomas's trial.  She was held in jail on a "material witness bond" before the trial started.  While she was in jail, Martinez

reportedly refused to speak to defense counsel or to answer questions about what she saw on the night of the robbery. When Thomas's defense counsel attempted to examine Martinez at trial about why she was arrested or whether she feared prosecution, the trial court sustained an objection from the State based on relevance. A hearing was held outside the jury's presence. Defense counsel tried to show that Martinez had a motive to identify Thomas as the robber and to testify favorably for the State to win her release from jail. Defense counsel argued that limiting his cross-examination would violate Thomas's constitutional right to confront Martinez. During the hearing, the State established that Martinez was arrested shortly before trial and placed in custody on a material-witness bond because she had failed to show up for a pretrial meeting. The prosecutor explained his concern that because Martinez was homeless, she would not comply with the State's subpoena to appear at Thomas's trial. During questioning, Martinez denied having any deal with the State in exchange for her testimony. She further denied having any reason to testify favorably in order to win her release. The following exchange occurred:

| | |
|---|---|
| STATE: | Miss Martinez, have I cut any kind of deal with you regarding your testimony or your release from incarceration? |
| MARTINEZ: | No, you have not. |
| STATE: | Have I told you that you will be charged with a particular – or any criminal offense if you don't testify a particular way? |
| MARTINEZ: | No, you have not. |
| STATE: | Is it fair to say that you are not happy with me when I made a motion to – for Judge Stricklin to place a [material witness] bond on you? |
| MARTINEZ: | No, I was not happy with you. |

| | |
|---|---|
| STATE: | And you have no prior felony convictions; is that correct? |
| MARTINEZ: | Correct. |
| STATE: | And no prior convictions involving a theft or a prostitution [offense] or [crime of] moral turpitude; is that correct? |
| MARTINEZ: | Correct. |
| STATE: | And is it your understanding that no matter how you testify in this trial, you get released, the bond will be lifted once the trial is over no matter how you testify? |
| MARTINEZ: | Correct. |
| STATE: | Have I ever threatened you in any way? |
| MARTINEZ: | No. |
| STATE: | Other than trying to get you to come to court? |
| MARTINEZ: | No. |
| STATE: | Okay. But have I ever threatened you in regard to try to tell you what you should say or should not say? |
| MARTINEZ: | No. |
| STATE: | Have I made you any type of promises at all conditioned on your testimony? |
| MARTINEZ: | No, you have not. |

*Court Reporter's Record*, vol. 3, at 87-88. The prosecutor argued that there was no evidence of bias

on Martinez's part. Noting that Martinez was displeased about being incarcerated as a material

witness, the prosecutor argued that there was no evidence of any possible motive to testify in the

State's favor.  *See id*. at 88-89.  The trial court agreed and restricted defense counsel from questioning Martinez about her incarceration during the trial.  *See id*. at 90.

Thomas repeated his objection on direct appeal that the trial court's limitation on cross-examination violated his right to confront and cross-examine Martinez.  The intermediate court of appeals, which was the last state court to consider Thomas's asserted violation of the Sixth Amendment Confrontation Clause, rejected his claim after concluding that the trial court's limits on cross-examination were proper.  The state appellate court stated as follows in its opinion:

### Limited Cross Examination

[Thomas]'s first point of error contends that the trial court violated his right to confrontation and Texas Rule of Evidence 613(b)[3] by refusing to allow him to question Kathy Martinez, an identification witness, about her incarceration to show bias, motive, or pressure that affected her testimony. Although Martinez's incarceration was not related to a prosecution against her, but solely pursuant to a material witness bond to assure her appearance at [Thomas]'s trial, [Thomas] asserts that Martinez could have nevertheless been biased in believing that how she testified could affect her incarceration.

A primary interest secured under the Confrontation Clause[4] is a criminal defendant's right of cross-examination over all matters reasonably calculated to expose the jury to facts from which they can draw inferences regarding the accuracy and truthfulness of a witness's testimony, including his motivation for testifying and other potential biases.[5]

---

[3]  *See* TEX. R. EVID. 613 (describing the procedure for impeaching a witness by proof of circumstances or statements showing bias or interest on the part of such witness).

[4]  *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10.

[5]  *Davis v. Alaska*, 415 U.S. 308, 315-18, 94 S. Ct. 1105, 39 L.Ed.2d 347 (1974); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *Hoyos v. State*, 982 S.W.2d 419, 420-421 (Tex. Crim. App. 1998).

> In this case, there is no evidence that Martinez had any matters pending with the State that could have provided a motive for her to testify in its favor. In addition, outside the presence of the jury, she testified that: (1) she was not influenced to testify in a certain way because she had been in jail; (2) she understood she would be released after trial no matter how she testified; and (3) the prosecutor had never threatened her or made any deal or promises to her conditioned on her testimony. The prosecutor similarly stated that a material witness bond had been placed on Martinez because she could not be located previously, and that there was no deal with her. Under these circumstances, we have no basis to conclude that evidence of Martinez's incarceration could have reflected adversely on her credibility. Accordingly, [Thomas]'s first issue is overruled.

*Thomas*, 2004 WL 26258, at *1 (footnotes in original). By refusing discretionary review, the Texas Court of Criminal Appeals agreed with the appellate court's conclusion that Thomas was not denied the right to confront or cross-examine the witness.

The record does not show that the Texas state court decision was "contrary to" or involved an "unreasonable application" of clearly established federal law. 28 U.S.C. § 2254(d)(1). In support of his claim for federal habeas relief, Thomas repeats the same allegations that were raised and rejected on direct appeal. Nothing in the record shows that the state court findings were incorrect or that the trial court erred by limiting cross-examination. *See* 28 U.S.C. § 2254(e)(1). Absent any showing that the trial court limited cross-examination in violation of the Sixth Amendment, Thomas fails to establish that the state court's decision to reject this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court.

Alternatively, as the respondent notes, any violation of the Confrontation Clause is subject to harmless error review. This may include consideration of such factors as the presence or absence of corroborating evidence and "the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. 673, 684 (1986). An independent review of the evidence shows that the State's case against

Thomas was strong even without the identification testimony Martinez provided.  One of the victims (Olivares) positively identified Thomas as one of the men who robbed him at gunpoint.  Based on this record, Thomas does not show that his conviction was tainted by constitutional error that had "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (holding that, on federal habeas corpus review under 28 U.S.C. § 2254, the *Brecht* standard of harmless error applies whether or not the state appellate court conducted a harmlessness review).  The error, if any, was harmless.  Thomas is not entitled to relief on federal habeas corpus review.

### B.      The Claim of Ineffective Assistance of Counsel

Thomas alleges that he was denied effective assistance of counsel during his trial because his attorney failed to object to hearsay during the punishment phase.  The respondent maintains that this claim does not merit relief under 28 U.S.C. § 2254(d) because Thomas does not show a constitutional violation or that the state court's decision to reject this claim was objectively unreasonable.

The Sixth Amendment right to counsel includes "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).  Claims for ineffective assistance of counsel are analyzed under *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See id.* at 687-88. To demonstrate deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant must overcome the presumption that, under the circumstances, "the challenged action might be considered sound trial strategy." *Riley v. Dretke,* 362 F.3d 302, 305 (5th Cir. 2004).

Deficient performance, standing alone, is not sufficient under *Strickland.* A petitioner must also demonstrate prejudice as a result of his counsel's deficient performance. Performance is prejudicial if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Id.*

Thomas was represented during his trial by local criminal defense attorney Vivian King. Thomas challenges King's failure to object to hearsay testimony from Officer Chappell of the HPD Robbery Division. Officer Chappell testified during the guilt-innocence phase that he was able to identify Thomas in the armed robbery in part based on evidence linking Thomas and his associates to an earlier, similar robbery. Officer Chappell also testified about this extraneous offense during the punishment phase. Thomas argues that during this testimony, Officer Chappell related conversations that he had with victims and witnesses of the other robbery during his investigation

into that case.  Thomas argues that this testimony was inadmissible hearsay and that his defense

counsel should have objected.

On direct review of this issue, the state appellate court found that Thomas demonstrated

neither deficient performance nor actual prejudice.  The appellate court provided the following

analysis:

### Ineffective Assistance of Counsel

[Thomas]'s second issue contends that he was denied effective assistance of counsel by his trial counsel's failure, during the punishment phase of trial, to object to inadmissible hearsay testimony regarding another similar robbery that linked him to the charged offense.

The Sixth Amendment guarantee of effective assistance of counsel to criminal defendants is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense. *Yarborough v. Gentry*, 540 U.S. 1, —, 124 S. Ct. 1, 4, 157 L.Ed.2d 1 (2003); *Rylander v. State*, 101 S.W.3d 107, 109-10 (Tex. Crim. App. 2003). However, ineffective assistance claims must be affirmatively demonstrated in the record. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). To overcome the presumption that a challenged action or omission might be considered sound trial strategy, the record must ordinarily reflect the reasons why counsel took, or failed to take, the action. *See Rylander*, 101 S.W.3d at 110-11.  To establish ineffective assistance for failing to object to evidence, an [Thomas] must establish that the evidence was inadmissible. *See Ortiz v. State*, 93 S.W.3d 79, 93 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 998, 123 S. Ct. 1901, 155 L.Ed.2d 824 (2003).

In this case, [Thomas] did not file a motion for new trial or otherwise develop a record reflecting his counsel's reason(s) for not objecting to the evidence, so as to rebut the presumption of sound trial strategy and establish deficient performance by his counsel.  In addition, [Thomas] has failed to demonstrate a probability that, but for counsel's alleged error, the result of the proceeding would have been different.  The evidence did not affect [Thomas]'s conviction, as the jury had already found him guilty of aggravated robbery with

a firearm.  Moreover, the jury's sentence of only 20 years without a
fine was at the low end of the possible range of punishment, as
enhanced by his prior conviction (15 to 99 years or life imprisonment
and a fine up to $10,000).  There is thus no indication that any failure
to object to the extraneous offense evidence (if even inadmissible)
caused [Thomas] harm.  Because [Thomas]'s second issue fails to
establish ineffective assistance of counsel, it is overruled, and the
judgment of the trial court is affirmed.

*Thomas*, 2004 WL 26258, at **1-2.  The Texas Court of Criminal Appeals agreed with this

conclusion when it refused discretionary review.

The state appellate court decision correctly identified the *Strickland* standard and applied it

to Thomas's ineffective-assistance claim.  Because Thomas repeats the same ineffective-assistance

claim on federal habeas corpus review, the question is not whether this court "'believes the state

court's determination' under the *Strickland* standard 'was incorrect but whether the determination

was unreasonable — a substantially higher standard.'"  *Knowles v. Mirzayance*, — U.S. —, 129 S.

Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)).  Because "the

*Strickland* standard is a general standard, a state court has even more latitude to reasonably

determine that a defendant has not satisfied that standard."  *Knowles*, 129 S. Ct. at 1420.

Thomas fails to show that his counsel had valid grounds under state law to object to the

testimony given by Officer Chappell.  In Texas, a police officer is allowed to explain the facts and

circumstances that lead him to develop the defendant as a suspect.  *See Dinkins v. State*, 894 S.W.2d

330, 347 (Tex. Crim. App. 1995).  To the extent Officer Chappell testified during the punishment

phase about Thomas's involvement in an extraneous offense, the record shows that the victims of

that robbery (Claudia Loayes and Abraham Gonzales) also testified and identified Thomas as the

person who committed that robbery.  After a finding of guilt has been made, as it was in Thomas's

case, Texas law allows the State to present "any other evidence of an extraneous crime or bad act that is shown by evidence beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act." TEX. CODE CRIM. PROC. art. 37.03 § 3(a)(1). Thomas does not show that Officer Chappell's testimony was inadmissible or that his trial counsel had, but failed to make, a valid objection.

Absent a showing that counsel failed to raise a meritorious objection and that the outcome would have been different, a petitioner fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel was not deficient in failing to present a meritless argument) (citation omitted); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions."). Thomas's allegation is insufficient to show deficient performance or actual prejudice. *See Day v. Quarterman*, 566 F.3d 527, 540-41 (5th Cir. 2009); *see also Lincecum v. Collins*, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support an ineffective-assistance claim).

Based on this record, Thomas does not show that he was denied effective assistance of counsel and he does not establish a constitutional violation. Thomas fails to demonstrate that the state court's decision to reject his ineffective-assistance claims was contrary to, or involved an

unreasonable application of, the deferential *Strickland* standard. Thomas is not entitled to relief on this issue.

## IV.   Certificate of Appealability

Under the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability must issue before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.

A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For the reasons discussed above, this court concludes that jurists of reason would not debate whether any procedural

ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.  A certificate of appealability will not issue.

## V.     Conclusion

The petition for a writ of habeas corpus is denied and this case is dismissed with prejudice. No certificate of appealability is issued.

SIGNED on June 30, 2010, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge